**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

TRACY BEACH,

               Plaintiff,

v.                                  CIVIL ACTION NO.   2:19-cv-00218

DXC TECHNOLOGY COMPANY, et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion for summary judgment filed by Defendants DXC Technology Company and DXC Technology Services, LLC (collectively, "DXC").   (ECF No. 27.)   For the reasons discussed more fully herein, the motion is **GRANTED**.

*I.        BACKGROUND*

Plaintiff Tracy Beach ("Plaintiff") brings this wrongful termination action against her former employer, DXC, alleging violations of the West Virginia Human Rights Act ("WVHRA") based on age, gender, and race discrimination, as well as retaliation.   (ECF No. 1-1.)   Plaintiff began her employment with DXC or its predecessor entities in 1995.   (ECF No. 29 at 2.)   In 2013, she was promoted to the Operations Manager.   (*Id.*; ECF No. 28 at 3.)   As Operations Manager, Plaintiff reported to the Deputy Account Manager, Heidi Owen, (ECF No. 28 at 4), and oversaw five departments at DXC's facility in Charleston, West Virginia, (*id.* at 3).   By 2018, however, Plaintiff's duties to oversee three of those departments were transferred to Owen.   (*Id.*)

Later in October 2018, DXC acquired Molina Medicaid Solutions ("MMS"), a subsidiary of Molina Healthcare, Inc.   (*Id.*; ECF No. 29 at 2.)   At that point, Plaintiff vocalized her concerns that the acquisition would result in some personnel losing their jobs and inquired about the future of her job.   (ECF No. 28 at 5; ECF No. 29 at 2.)   Plaintiff was assured that no one would be discharged as a result of the acquisition.   (ECF No. 29 at 2.)   However, on November 15, 2018, Plaintiff was informed that her employment was terminated, effective the following day, pursuant to a workforce reduction policy.   (ECF No. 28 at 5; ECF No. 29 at 3.)

Plaintiff is an African American woman who was 56 years old at the time of her termination.   (ECF No. 29 at 2.)   Around the same time, four other employees were also terminated pursuant to the workforce reduction policy.   (*Id.*; ECF No. 28 at 6.)   The five employees who were discharged were all female, three were over 40 years old, and two were African American.   (ECF No. 28 at 6; ECF No. 29 at 3.)   Plaintiff alleges that the workforce reduction policy was created to "target the older workforce" and that DXC has "hired or intended to hire substantially younger employees to replace Plaintiff and the [] other terminated employees . . . ."   (ECF No. 1-1 at 8 ¶¶ 19, 21.)   In her complaint, Plaintiff asserts four counts against DXC under the WVHRA for age, gender, and race discrimination, as well as retaliation.   DXC filed the present motion to summary judgment on January 16, 2020.   (ECF No. 27.)   Plaintiff filed a timely response, (ECF No. 29), and DXC timely replied, (ECF No. 30).   As such, the motion is fully briefed and ripe for adjudication.

## II.    *LEGAL STANDARD*

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R.

Civ. P. 56(a).   "A fact is material when it 'might affect the outcome of the suit under the governing law.'"   *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   "A genuine dispute arises when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"   *Id.* (quoting *Anderson*, 477 U.S. at 248).   "Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."   *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration and internal quotation marks omitted).

"The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ."   *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).   In ruling on a motion for summary judgment, this Court "view[s] the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party."   *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)).

## III.   DISCUSSION

### A.  Employment Discrimination under the WVHRA

Under the WVHRA, it is unlawful "[f]or any employer to discriminate against an individual with respect to . . . tenure . . . if the individual is able and competent to perform the services required . . . ."   W. Va. Code § 5-11-9(a)(1).   "Discriminate" means "to exclude from, or fail or refuse to extend to, a person equal opportunities" based on several protected classes, including race, sex, and age.[1]   W. Va. Code 5-11-3(h).   The West Virginia Supreme Court of

---

[1] The WVHRA defines "age" as "the age of forty or above."   W. Va. Code § 5-11-3(k).

3

Appeals has held that an employment discrimination claim under the WVHRA is governed by the same analytic framework of Title VII of the Civil Rights Act of 1964, as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152, 159 (W. Va. 1995); *Calef v. FedEx Ground Packaging Sys., Inc.*, 343 F. App'x 891, 898 (4th Cir. 2009).

Under the burden-shifting *McDonnel Douglas* framework, the plaintiff must first establish a prima facie case of employment discrimination.  *See Knotts v. Grafton City Hosp.*, 786 S.E.2d 188, 194 (W. Va. 2016).  The plaintiff may carry this burden by establishing: "(1) that she is a member of a protected class; (2) that the employer made an adverse decision concerning her; and (3) that but for the plaintiff's protected status, the adverse decision would not have been made." *Reese v. CAMC Mem'l Hosp., Inc.*, No. 2:09-cv-00223, 2010 WL 2901627, at *4 (S.D. W. Va. 2010) (citing *Mayflower Vehicle Systems, Inc. v. Cheeks*, 629 S.E.2d 762, 772–73 (W. Va. 2006)). If the plaintiff can make out these elements, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment decision.  *See Charleston Town Ctr. Co., LP v. W. Va. Human Rights Comm'n*, 688 S.E.2d 915, 920 (W. Va. 2009).  "The reason need not be a particularly good one.   It need not be one which the judge or jury would have acted upon.   The reason can be any other reason except that the plaintiff was a member of a protected class."  *Conway v. E. Assoc. Coal Corp.*, 358 S.E.2d 423, 430 (W. Va. 1986).  If the proffered reason is nondiscriminatory, then the plaintiff regains the burden of showing by a preponderance of the evidence that the articulated reason is a mere pretext for the actual, discriminatory motive. *See Charleston Town Ctr. Co., LP*, 688 S.E.2d at 920–21.

"Pretext" as it relates to unlawful discriminatory employment practices "means an ostensible reason or motive assigned as a color or cover for the real reason or motive, or false appearance, or pretense." *Mayflower Vehicle Sys., Inc.*, 629 S.E.2d at 773. Pretext of this nature may be shown through several forms of evidence: "(1) comparative evidence, (2) statistical evidence, and (3) direct evidence of discrimination, in the form of discriminatory statements and admissions." *Charleston Town Ctr. Co., LP*, 688 S.E.2d at 921 (quoting *Miles v. M.N.C. Corp.*, 750 F.2d 867, 870 (11th Cir. 1985)). If a plaintiff can, through direct or circumstantial evidence, show that the employer's nondiscriminatory reason for the employment decision is dishonest and a pretext, then discrimination may be inferred. *See Mayflower Vehicle Sys., Inc.*, 629 S.E.2d at 773 (citing *Barefoot*, 457 S.E.2d at 156).

In Counts I through III, Plaintiff alleges that DXC terminated her employment on account of her age, gender, and race. (ECF No. 1-1 at ¶¶ 24–54.) The first requirement of her discrimination claims is easily satisfied as it is undisputed that Plaintiff is female, African American, and was 56 years old at the time of her termination. With respect to the second element, there is no dispute that Plaintiff's termination constituted an adverse employment decision. Thus, only the third element is at issue. In order to meet this element, a plaintiff need only "show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." *Conway*, 358 S.E.2d at 429–30; Syl. pt. 2, *Barefoot*, 457 S.E.2d at 156 ("the 'but for'" analysis "is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination.").

1. *Age Discrimination*

The West Virginia Supreme Court of Appeals has explained that "a plaintiff, who is age forty or older, pursuing an age discrimination claim under the [WVHRA], may satisfy the third prong of the prima facie age discrimination test contained in [*Conaway*] by presenting evidence that he/she was replaced by a 'substantially younger' employee." Syl. pt. 4, *Knotts*, 786 S.E.2d at 190. While there is no bright line rule for determining what qualifies as a "substantially younger" employee, "age differences of ten or more years have generally been held to be sufficiently substantial to satisfy the 'substantially younger' rule." *Id.* at 198–99 (internal markings and citation omitted).

Plaintiff contends that she has put forth evidence that satisfies this test because shortly after her termination, she was replaced by Randi Kimes, who is 16 years younger than Plaintiff. (ECF No. 29-6.) DXC disputes the contention that Plaintiff was replaced. Rather, DXC maintains that Plaintiff's job duties were assumed by other managers, including Kimes and Owen. MMS's Account Manager, Karen Hoylman, testified that Plaintiff's position as Operations Manager was eliminated. (ECF No. 29-5 at 15.) In addition, she stated that Owen and Kimes assumed some of the duties for which Plaintiff was previously responsible. (*Id.* at 15.) Similarly, Plaintiff testified that, to the best of her knowledge, her position was eliminated and her former "duties were distributed to other managers." (ECF No. 27-2 at 39.)

Owen also provided a declaration, confirming that she assumed several of Plaintiff's responsibilities both before and after Plaintiff's termination. (ECF No. 30-3 at ¶ 14.) Owen stated that she was 50 years old at the time she assumed Plaintiff's job duties, (*id.* at ¶ 16), and she continued to perform those duties until a year after Plaintiff's termination when her position

6

changed, (*id.* at ¶ 15).   At this time, the responsibilities Owen had assumed for Plaintiff were passed over to Kimes.   (*Id.*)   It is clear from this evidence that Owens did not take Plaintiff's place but, rather, a portion of the duties associated with Plaintiff's position were consolidated with that of Owen.   Even if Owen did replace Plaintiff, her replacement would not suggest an illegal discriminatory motive because Owen is not substantially younger than Plaintiff.

As for Kimes, however, Hoylman testified that Kimes moved into Plaintiff's position in December 2018 and eventually accepted a permanent position fulfilling Plaintiff's former role. (ECF No. 29-5 at 3, 14.)   She further stated that Plaintiff's position and job duties are "key" to DXC operations.   (*Id.* at 14.)   A reasonable jury could conclude from this evidence that Plaintiff was replaced by a substantially younger employee.   *See Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (illustrating that "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.   A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."); *Bostic v. Drummond Ltd.*, No. 15-cv-12723, 2017 WL 2990291, at *4 (S.D. W. Va. July 13, 2017) (finding plaintiff was replaced by a younger employee, who assumed plaintiff's former title and was promoted to take over plaintiff's responsibilities).   While not dispositive, the Court will assume for purposes of this motion that Plaintiff has established a prima facie case of age discrimination.   *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994) (holding, "[i]n a reduction of work force case, the fact that the duties of a terminated older employee were assumed by a younger individual is not conclusive of age bias.").

7

DXC counters that Plaintiff was terminated as part of a work force reduction resulting from the acquisition of MMS. (ECF No. 29-4.) In determining which positions to include in the workforce reduction, managers were directed to: (1) "look for efficiencies"; (2) "flatten the organization" such that managers supervise at least thirty people; and (3) consider any nonperforming employees. (ECF No. 27-3 at 9.) Removing multiple layers of management was necessary to reduce the number of leaders and ultimately flatten the organization. (*Id.* at 10.) The work force reduction impacted Plaintiff's role because only two employees, who supervised two separate departments, reported to Plaintiff at the time of her discharge. (ECF No. 27-4; ECF No. 27-3 at 15 (stating three of five departments assigned to Plaintiff had previously been transferred to Owen).) Her position, therefore, encompassed work that could be absorbed by other managers to capitalize on shared efficiencies. (*Id.* at 14.) Because DXC's reason for Plaintiff's termination is facially nondiscriminatory, the burden shifts back to Plaintiff to prove the reason offered by DXC is merely pretext.

Beyond the claim that DXC replaced Plaintiff with a substantially younger employee, Plaintiff offers very little evidence that the proffered reason for her termination is pretext. Plaintiff first argues that pretext exists because DXC representatives stated during town hall meetings that no employees would lose their jobs as a result of the acquisition. (ECF No. 29 at 9.) However, Lisa Reik, from human resources, disputes this assertion. Reik testified that during town hall meetings a DXC representative stated that while "an army of DXC employees [] were [not] going to come in to take over their jobs, . . . they could not guarantee that there would not be synergies . . . ." (ECF No. 27-5 at 4–5.) Even if DXC assured that no employees would be laid off, an employer is entitled to make business decisions that differ from its previous business plan.

Indeed, at will employment contracts are for an indefinite duration and such employees are not guaranteed perpetual employment. *See Herbert J. Thomas Mem'l Hosp. Ass'n v. Nutter*, 795 S.E.2d 530, 540 (W. Va. 2016) (generally, "an employer may discharge an 'at will' employee at any time and for any reason."). Thus, Plaintiff's speculations about why DXC changed its position and created the workforce reduction policy is insufficient to create a triable issue of material fact.

Next, Plaintiff points to an unsigned disciplinary notice to her as evidence that DXC contemplated her dismissal earlier or "w[as] attempting to craft a pretextual explanation for Plaintiff's dismissal." (ECF No. 29 at 9.) However, it is neither illegal nor discriminatory for DXC to contemplate Plaintiff's dismissal at some point prior. *See Nutter*, 795 S.E.2d at 540. Further, the existence of a disciplinary notice that was never given to Plaintiff is not material to this case because Plaintiff was not terminated for her performance nor was Plaintiff told that her performance was the reason for her termination. (ECF No. 27-3 at 8–9; ECF No. 27-5 at 3; ECF No. 27-2 at 22.)

Lastly, Plaintiff relies on an affidavit from her former co-worker, Ellen Charlesbois, as "direct evidence" of pretext. (ECF No. 29 at 6.) Charlesbois states in her affidavit that she "obtained first-hand knowledge" of DXC's workforce reduction policy and that "DXC targets the older workforce and/or employees who are at the top of their pay level." (ECF No. 29-2 at ¶¶ 9– 10.) She also claims to have personal knowledge of the so called "war room," where "DXC determined which employees were nearing retirement age and/or the highest compensated in their role and made the decision to lay off those employees for either one of both reasons." (*Id.* at ¶¶ 11–15.) Charlesbois continues by stating that Plaintiff held a "key position" and that she believes

Plaintiff was terminated because of her age, not because she held a position that was an extra layer of unneeded management.  (*Id.* at ¶¶ 17–19.)

DXC argues that the affidavit does not conform to Rule 56(c)(4) of the Federal Rules of Civil Procedure, which requires that affidavits used during summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (evidence submitted in opposition to summary judgment motion must be admissible and based on personal knowledge).  The Court agrees that Charlesbois has not explained how she obtained personal knowledge of the workforce reduction policy or purported decisions made in the war room.  The mere fact that Charlesbois previously worked for DXC in some undisclosed managerial role is too general to establish any personal knowledge.

According to the undisputed evidence, Charlesbois worked remotely from Kentucky and did not manage any employees in her position.  (ECF No. 30 at ¶¶ 9–11.)  There is no record of Charlesbois receiving training on the workforce reduction policy or process.  (*Id.* at ¶¶ 11–12.) She did not oversee Plaintiff or work with Plaintiff in any capacity at the time the workforce reduction policy was implemented.  (ECF No. 30-2 at ¶ 21.)  In fact, she was rarely at the Charleston facility.  (*Id.* at ¶ 9.)  Additionally, Charlesbois was not consulted about Plaintiff's termination nor did she take part in any meetings or have any involvement regarding the sections for the workforce reduction policy.  (ECF No. 30-2 at ¶ 20; ECF No. 30-3 at ¶¶ 11–12.) Charlesbois' unsupported assertions and personal opinions about the reasons for Plaintiff's termination and workforce reduction policy are irrelevant. *See Evans*, 80 F.3d at 960–61 (in considering the opinions of co-workers in wrongful discharge cases, "[i]t is the perception of the

10

decision maker which is relevant . . . .") (citing *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)). Further, because Paragraphs 9 through 15 and 17 through 19 fail to substantiate inferences and opinions with specific facts, the Court strikes these paragraphs of Charlesbois affidavit as conclusory and they will not be considered to create a genuine issue of material fact.

DXC has put forth evidence that further undermines Plaintiff's claim that her termination was driven by her age.   First, at the time of the workforce reduction, 71% of the 131 employees at the Charleston facility were over the age of 40, i.e., the minimum protected age under the WVHRA, and 29% were over the age of 55.   (ECF No. 27-1 at ¶ 9.)   Although three employees over the age of 40 were terminated, Plaintiff's reliance on this statistical evidence is insufficient because she fails to compare similarly situated individuals and offers no evidence about the circumstances of their termination.   Indeed, as DXC has established, the other two terminated employees held nonmanagerial positions, unlike Plaintiff, and neither of them were replaced. (ECF No. 30-2 at ¶¶ 15–19.)

Second, Hoylman was the primary decision maker with respect to Plaintiff's employment, and she was 59 years old at the time she made the decision to terminate Plaintiff.[2]   *See McNeal v. Montgomery Cnty., Md.*, 307 F. App'x 766, 775 (4th Cir. 2009) (evidence that decision-makers were in the same protected class as plaintiff creates an inference against discrimination) (citing *Richter v. Hook–SuperRx, Inc.*, 142 F.3d 1024, 1032 (7th Cir. 1998)); *DeWitt v. Mecklenburg Cnty.*, 73 F. Supp. 2d 589, 598–99 (W.D. N.C. 1999) (finding plaintiff's allegations of discrimination "particularly unpersuasive" where the decision makers were in the same protected class as the employee).   Even under a "mixed motive" theory, there is no evidence that suggests a

---

[2] DXC cites to pages 4 and 36 of Hoylman's deposition but failed to attach these pages to their motion or reply brief. (*See* ECF No. 28 at 14.)   If properly established, this fact would undercut Plaintiff's claim further.

discriminatory motive played some part in DXC's decision to terminate Plaintiff. *Mayflower Vehicle Sys., Inc.*, 629 S.E.2d at 773; *Skaggs v. Elk Run Coal Co.*, 479 S.E.2d 561, 584 (W. Va. 1996) (in a mixed motive case, "a discriminatory motive combines with some legitimate motive to produce an adverse action against the plaintiff."). Accordingly, as nothing in the record supports a finding that Plaintiff's termination had anything to do with her age, DXC's motion for summary judgment as to Plaintiff's age discrimination claim is **GRANTED**.

> 2. *Gender and Race Discrimination*

Turning to Plaintiff's gender and race discrimination claims, Plaintiff relies almost entirely on statistical evidence to establish a causal connection between her termination and her status as an African American female. *See Moore v. Consolidation Coal Co.*, 567 S.E.2d 661, 669 (W. Va. 2002) (statistical evidence "standing alone [is] not likely to establish a case of individual disparate treatment."). Of the five employees terminated, Plaintiff highlights that all are female and two are African American. While statistics are commonly used "to uncover clandestine and covert discrimination by the employer," *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 340 n.20, 97 S. Ct. 1843, 1857, 52 L. Ed. 2d 396 (1977) (internal quotation marks and citations omitted), Plaintiff's statistical evidence is flawed because it does not take in to account the percentages of females and African Americans living in the Charleston area or employed at DXC's Charleston facility. *See Roman v. ESB, Inc.*, 550 F.2d 1343, 1350 (4th Cir. 1976) (holding that "isolated bits of statistical information [do not] necessarily make a prima facie case when divorced from other and contrary statistics and from" the entire statistical make-up of the employer's facility). Thus, the Court cannot infer a "gross statistical disparity" or a general discriminatory

12

pattern of DXC from this evidence alone.[3]   *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299,

308 n.14, 97 S. Ct. 2736, 2742, 53 L. Ed. 2d 768 (1977) (holding that a standard deviation must

be calculated to measure the significance of statistical disparities).

With respect to race discrimination, Plaintiff also argues that DXC replaced her with a

white employee, i.e. Kimes.   For the reasons discussed above, issues of fact preclude the Court

from determining whether Plaintiff was in fact replaced.   *See supra* at 7.   However, whether

Plaintiff has established a prima facie case of race discrimination is of no moment because the

DXC has offered a legitimate, nondiscriminatory reason for Plaintiff's termination that Plaintiff

has not rebutted.   *See supra* at 8–12.   Thus, as the evidence falls short of creating a genuine issue

of material fact for trial, DXC's motion for summary judgment as to Plaintiff's gender and race

discrimination claims is **GRANTED**.

### B.  Retaliation under the WVHRA

Plaintiff asserts a retaliation claim under the WVHRA in Count IV.   (ECF No. 1-1 at ¶¶

55–62.)   The WVHRA prohibits an employer from engaging in any form of reprisal for an

employee's participation in protected activity, i.e., an employee's opposition to any unlawful

employment practice.   *See Frank's Shoe Store v. W. Va. Human Rights Comm'n*, 365 S.E.2d 251,

258 (W. Va. 1986); W. Va. Code § 5-11-9(7).   To prove a prima facie case of retaliatory discharge

under the WVHRA, a plaintiff must prove the following: "(1) that the complainant engaged in

protected activity, (2) that complainant's employer was aware of the protected activities, (3) that

---

[3] Additional statistics offered by DXC show that at the time of Plaintiff's termination, 81% of the 131 employees at the Charleston facility were female.   (ECF No. 27-1 at ¶ 8.)   Additionally, while not representative of African Americans specifically, 23% of the employees working in the Charleston facility self-identify as a minority while less than 15% of the population of the Charleston area is African American.   (*Id.* at ¶ 10; ECF No. 28 at 2 (citing United States Census Bureau, Quick Facts - Charleston, West Virginia, 2019 https://www.census.gov/quickfacts/charlestoncitywestvirginia (last visited June 9, 2020)).)

complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation), (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation." *Biddle v. Fairmont Supply Co.*, No. 1:14-cv-122, 2015 WL 5634611, at *5 (N.D. W. Va. Sept. 24, 2015), *aff'd*, 648 F. App'x 382 (4th Cir. 2016) (citing Syl. pt. 10, *Hanlon v. Chambers*, 464 S.E.2d 741, 753 (W. Va. 1995)). "Protected activity under the [WVHRA] includes opposition to a practice that the plaintiff reasonably and in good faith believes violates the provisions of the Act." *Roth v. DeFeliceCare*, Inc.,700 S.E.2d 183, 193 (W. Va. 2010). Protected activity also includes the filing of a complaint against an employer for discrimination. *Id.*

Here, Plaintiff claims that DXC unlawfully retaliated against her because "she vocalized her concerns that the DXC acquisition would result in some personnel losing their jobs . . . ." (ECF No. 29 at 8.) DXC argues that Plaintiff's retaliation claim fails because Plaintiff cannot establish that she engaged in protected activity that would trigger protection under the WVHRA. The Court agrees and finds that Plaintiff's claim is misguided. Fatally, Plaintiff's inquiry into her job status does not constitute a protected activity. Plaintiff testified that she never made a discrimination complaint while working for DXC, (ECF No. 27-2 at 43), and there is simply no evidence that shows her inquiry into her job status had anything to do with her age, gender, or race. Consequently, as Plaintiff has not established that she engaged in a protected activity under the WVHRA, DXC's motion for summary judgment as to Plaintiff's retaliation claim is **GRANTED**.

## IV.   CONCLUSION

For the foregoing reasons, DXC's motion for summary judgment, (ECF No. 27), is **GRANTED**. Accordingly, this case is **DISMISSED** and retired from the docket of this Court.

14

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        June 9, 2020

_____

THOMAS E. JOHNSTON, CHIEF JUDGE

15